THE STATE OF OHIO, APPELLEE, *v.* CARTELLONE ET AL., APPELLANTS.

(Nos. 43771 and 43711—Decided December 3, 1981.)

Mr. *John T. Corrigan,* prosecuting attorney, for appellee.

Mr. *Charles E. Mosley, Jr.,* and *Mr. Ronald C. Balbier,* for appellant Cartellone.

Mr. *Robert A. Ruggeri,* for appellant Giordano.

PRYATEL, P.J. Defendants-appellants, Anthony J. Cartellone and Louis Giordano (hereinafter Cartellone and Giordano, respectively), were indicted on three counts of felonious assault under R.C. 2903.11. Giordano moved for a separate trial on February 2, 1981, which the court overruled. Following a waiver of

their right to a trial by jury, appellants were tried together to the court. On March 5, 1981, the court found appellants guilty on all three counts, and sentenced them to a term of two to fifteen years on each count, the sentences to run concurrently.

Thereafter, each appellant separately filed a motion for a new trial, and simultaneously a notice of appeal to this court. Following the filing of each notice of appeal, the court entered its decision to overrule each appellant's motion for a new trial.[1] The two appeals have since been consolidated for our review.

On the evening of April 11, 1980, Cartellone as driver of an automobile, accompanied by his wife and his friend Giordano, stopped for gasoline at a Shell station at I-271 and Mayfield Road. When Giordano went inside to buy cigarettes, he came upon Armand Mastandrea, with whom he had "previous problems." Armand, a licensed gun dealer, was showing some acquaintances two new guns which he carried in a box. Armand testified that when Giordano saw him he blurted out some "profanities" and said, "Going to f------ get you." According to Armand, when he left the station, he was pursued by the car that Cartellone was driving, and when he (Armand) stopped for a traffic light, Giordano, the passenger, flipped a lighted cigarette over onto his (Armand's) dashboard.

Armand proceeded to his ex-wife's house nearby on Crestwood Avenue in Mayfield Heights, pulling into the driveway around 11:00 p.m. Armand's ex-wife, Sharon Mastandrea, testifed that she was watching T.V. when she heard "screaming and hollering outside," looked out, and saw Armand's car in the driveway. The Cartellone car then pulled up along the treelawn, and Giordano came out. Fighting words were exchanged. Then Cartellone exited from the car, grabbed Giordano, and guided him back to the car with Giordano getting behind the wheel and Cartellone taking the passenger seat.

At this point there is a dispute in the testimony. According to Armand and his ex-wife, as the car began to pull away, Cartellone fired three times *at Armand* from the passenger seat. According to Cartellone and his wife Laura, it was Armand who threatened Giordano and Cartellone with a gun, while he (Cartellone) was unarmed.

Sharon Mastandrea observed (1) Giordano and Armand arguing, (2) Cartellone guiding Giordano back to the driver's seat, and (3) Cartellone firing three times from the moving car at Armand. During this incident Sharon was standing in the open door behing the screen with her six-year old daughter Dawn beside her.[2]

Cartellone and Giordano were convicted on three separate counts of felonious assault directed against (1) Armand Mastandrea, (2) his ex-wife Sharon and (3) their daughter Dawn.

Appellant Cartellone cites three assignments of error, while appellant Giordano lists six. We will first treat Cartellone's assignments, discussing the first two together:

Assignments of Error Nos. I and II

"I. The trial court erred by not dismissing the second and third counts of felonious assault or by not ordering a

---

[1] Under App. R. 4(B), appeals in criminal cases:

"* * * A notice of appeal filed after the announcement of a decision, sentence or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof. * * *"

[2] The following day Lieutenant Thomas Strasshofer of the Mayfield Heights Police recovered a spent bullet from a revolver from the front of the residence on Crestwood Avenue.

merger of counts two and three with count one.

"II. The trial court erred by returning a guilty verdict as to the second and third counts, because the state failed to [prove] separate animus and thus an essential element as to these counts."

The thrust of Cartellone's argument is that he was improperly convicted of three separate counts of felonious assault under R.C. 2941.25, which states:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

None of the Supreme Court cases decided under this statute has dealt with a fact situation corresponding to ours, namely, where a defendant is charged with multiple counts of the same offense (here, felonious assault) for conduct arising out of one continuous sequence of events (firing three shots in quick succession from a moving vehicle).[3] However, in *State* v. *Sanders* (1978), 59 Ohio App. 2d 187 [13 O.O.3d 209], the Court of Appeals for Summit County relying on R.C. 2941.25(A), vacated three out of four convictions for receiving stolen property in a case where the defendant acquired property stolen from four different owners in

one transaction. The holding in *Sanders* was as follows:

"* * * the defendant, as a matter of law, cannot be convicted of four separate crimes of receiving stolen property, when he received the items at the same time, from the same source in the same transaction. While the state proved beyond a reasonable doubt that defendant is guilty of one count of receiving stolen property, they offered no evidence to show that defendant harbored a separate animus toward each individual owner * * *." (*Id.* at 191.)

In a similar vein, our court in *State* v. *Parnell* (May 24, 1979), No. 38756, unreported, vacated one of appellant's two convictions for aggravated arson. The defendant in *Parnell* was charged in a two-count indictment with knowingly creating a substantial risk of physical harm to two different victims. The court regarded this indictment as charging appellant "in different ways with the commission of the same offense" (at page 13), quoting with approval from *State* v. *Weed* (1954), 110 Ohio App. 186 [12 O.O.2d 457]:

" '*Where several counts in an indictment charge in different ways the commission of the same offense,* or charge the commission of different crimes or degrees of crime which, by reason of the fact that they are of the same character and grow out of the same transaction, are in effect parts or aspects of one offense, or where the crime charged in one count necessarily embraces the crime charged in another, *it is erroneous for the court,* on a finding of a general verdict or plea of guilty, *to impose separate penalties for the several counts,* whether by way of separate sentences to run successively, or a single gross sentence lumping the several penalties. In such case [the] *accused is*

---

[3] Cartellone has called our attention to two federal cases precluding multiple convictions for bank robbery where the robbers threatened the life of more than one teller; but the holding in these cases is confined to a construction of the applicable federal statute in light of Congress' presumed intent. See *United States* v. *Fleming* (C.A. 7, 1974), 504 F. 2d 1045, and *United States* v. *Shelton* (C.A. 4, 1972), 465 F. 2d 361.

*subject only to a single penalty on all the counts constituting one entire offense * * *.' " (Id.* at 191-192, quoted in *Parnell* at 14; emphasis added.)

In our case, Cartellone was charged with three counts of·felonious assault, each count directed at a different victim arguably within range of the shots allegedly fired from the moving automobile. The crime of felonious assault is defined as follows:

R.C. 2903.11 (felonious assault):

"(A)  No person shall knowingly:

"* * *

"(2)  Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code."

The requisite intent for this crime is that it must be committed "knowingly"; and according to R.C. 2901.22(B):

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

This *mens rea* may be contrasted with the higher degree of culpability needed for a specific intent crime, that is, for a crime committed "purposely."[4] Under the common law, crimes committed with "knowledge" were classified as crimes of general intent,[5] and culpability could be inferred from the voluntary performance of the act itself — in our case, the shooting of a gun in a place where there was a risk of injury to one or more persons, "regardless of [the defendant's] purpose" in so doing.

From the testimony of the prosecution's witnesses, to wit, Armand and his ex-wife Sharon, Cartellone's purpose to "attempt to cause serious physical harm" to Armand, can be inferred from

Cartellone's conduct, coupled with the bullet recovered by police from the front of the residence the following day and other testimony. For example, Armand's description of the shooting was as follows:

"Both [Cartellone and Giordano] got in [their car]. Myself, I walked over and I moved myself in the position of right here. I have three or four steps that go up [to the front door]. My wife and daughter were in the front door. I was in the corner. And Tony [Cartellone], as he got into the door and the car appeared to be moving away, pulled out his hand and he shot three times *at me.* And by this time the car was in this area, which would be at the corner of my property, like that. Those shots went across the neighbor's driveway, in this type of direction." (Emphasis added.)

Other testimony places Armand at the "bottom of the steps" or on the walkway between the driveway and the steps to the front door at the time of the shooting. Meanwhile, Sharon and her daughter Dawn were standing in the open doorway behind the screen door when the shooting allegedly occurred. According to Armand,

"She [Sharon] was holding the door open, like this, and my daughter was here. And she was looking out over the front yard * * *."

We hold that this evidence is sufficient to indict Cartellone on three separate counts of felonious assault directed at Armand, Sharon and Dawn Mastandrea, respectively, since under the circumstances there was arguably a probability that his conduct could have caused harm to the two other people besides Armand who were within range of his gunfire. To convict on all three counts is another matter.

Cartellone argues that under R.C. 2941.25 the state failed to demonstrate that he had a separate animus necessary

_____

[4] See R.C. 2901.22(A).

[5] For a helpful discussion of types of *mens*

*rea,* see *United States* v. *Bailey* (1980), 444 U.S. 394, at 403-406, and citations therein.

to support convictions for all three charges of felonious assault. We agree.

R.C. 2941.25(B) states that when defendant's conduct "results in two or more offenses of the same * * * kind *committed separately or with a separate animus as to each,* * * * the defendant may be convicted of all of them." (Emphasis added.) Otherwise, R.C. 2941.25(A) defining "allied offenses of similar import" is applicable, such that a defendant may be charged with multiple counts but "convicted of only one [offense]."

"Animus" has been defined as "purpose, or more properly, immediate motive." *State* v. *Logan* (1979), 60 Ohio St. 2d 126, at 131 [14 O.O.3d 373]. The word "purpose" is further explained in the following holding from *State* v. *Donald* (1979), 57 Ohio St. 2d 73, at 75 [11 O.O.3d 242]:

"Within the contemplation of R.C. 2941.25(A), allied crimes of similar import necessarily must consist of crimes committed for the same purpose. As the Court of Appeals stated in its decision, R.C. 2941.25(A) '* * * prohibits duplication where *both crimes are motivated by a single purpose and where both convictions rely upon identical conduct and the same evidence.'* " (Emphasis added.)

Although the *Donald* court applied the statute to a conviction for two different offenses, rather than multiple counts of the same offense, we find its language pertinent to our fact situation.

Where no "separate animus" for multiple counts of the same crime can be shown, it must still be determined under the statute that the offenses were not committed "separately." In our case, Cartellone fired three successive gunshots. According to Sharon, "then three shots were fired and the car was gone." However, she testified that she was "absolutely positive" that she saw Cartellone "fire three shots at *Armand Mastandrea.*" Armand himself corroborated this observation in his

testimony that "* * * he [Cartellone] shot three times *at me.*" (Emphasis added.) We hold under these facts that Cartellone's conduct constituted one continuous sequence of acts and that in the absence of a showing of a separate animus, multiple convictions would be a violation of R.C. 2941.25. As the Supreme Court noted in *State* v. *Roberts* (1980), 62 Ohio St. 2d 170, at 172-173 [16 O.O.3d 201]:

"The statute [R.C. 2941.25] prohibits cumulative punishment of a defendant for the same criminal act where his conduct can be construed to constitute two statutory offenses, when, in substance and effect, only one offense has been committed."

Under our facts, there is no evidence that Cartellone had any purpose or motive to harm anyone beside Armand. Nor is there any evidence that he had any knowledge of the presence of Sharon and her daughter in the doorway. Since there was no consequential harm resulting to these two innocent bystanders, we cannot transfer the animus to harm Armand to Sharon and Dawn, as we would have been called upon to decide had either Sharon or Dawn been struck, in view of the well-established legal doctrine that a defendant is responsible for the natural and probable consequences of his acts. *State* v. *Farmer* (1951), 156 Ohio St. 214 [46 O.O. 97].

Accordingly, we find that "in substance and effect" Cartellone committed only one offense of felonious assault, that is, against Armand Mastandrea. Cartellone's second assignment of error is sustained.

Assignment of Error No. III

"III. The decision of the trial court of guilty on all three counts of felonious assault was against the manifest weight of the evidence."

That portion of Cartellone's final assignment of error which concerns the second and third counts of felonious

assault is rendered moot by our foregoing discussion.

As to the remaining count of felonious assault directed against Armand Mastandrea, there is ample evidence on the record which, if believed by the trier of fact, would support Cartellone's conviction beyond a reasonable doubt. In the face of conflicting testimony, the weight to be given to the evidence and the credibility of the witnesses must be primarily reserved to the trier of fact, and it is not for us to disturb its decision. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230 [39 O.O.2d 366].

Appellant Cartellone's conviction of the first count of felonious assault upon Armand Mastandrea is hereby affirmed. Cartellone's convictions on the second and third counts of felonious assault upon Sharon and Dawn Mastandrea, respectively, are hereby remanded to the trial court with instructions to vacate.

We will now treat appellant Giordano's assignments of error in his separate appeal beginning with his first four assignments of error:

"I. The trial court committed prejudicial error in overruling appellant's motion for acquittal at the close of the state's case in chief because the evidence was insufficient as a matter of law to establish appellant's complicity in the alleged felonious assault with a gun.

"II. The trial court committed prejudicial error in overruling appellant's motion for acquittal at the close of all the evidence because the evidence was insufficient as a matter of law to establish appellant's complicity in the alleged felonious assault with a gun.

"III. Appellant's conviction is so devoid of evidentiary support as to render it unconstitutional under the Due Process Clauses of the United States Constitution, Fourteenth Amendment, and the Ohio Constitution, Article I, Section 16.

"IV. Appellant's conviction is contrary to the manifest weight of the evidence."

All these assignments of error concern the sufficiency of the evidence to support Giordano's conviction of felonious assault as an aider and abettor of his companion Cartellone. The Ohio statute defining complicity is R.C. 2923.03, which provides in part:

"(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

"* * *

"(2) Aid or abet another in committing the offense * * *."

Giordano contends that he cannot be convicted of felonious assault as an aider or abettor since there is no evidence that he was even aware that Cartellone was armed with a gun, and since his mere presence at the scene is insufficient as a matter of law to uphold his conviction for the same crime as the principal.

Evidence of aiding and abetting another in the commission of crime may be demonstrated by both direct and circumstantial evidence. Thus, "[p]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." *State* v. *Pruett* (1971), 28 Ohio App. 2d 29, at 34 [57 O.O.2d 38]. Aiding and abetting may also be established by overt acts of assistance such as driving a getaway car or serving as a lookout. See *State* v. *Trocodaro* (1973), 36 Ohio App. 2d 1 [65 O.O.2d 1].

In the case *sub judice,* there was testimony that Giordano swore at Armand at the gas station that he was "Going to f------ get [him]," threw a lit cigarette onto the dashboard of Armand's car, and as a passenger in Cartellone's car, followed Armand to Armand's ex-wife's residence where he (Giordano) got out of the car and exchanged taunts with Armand.

At that point, according to Armand, Cartellone got out of his car, and "reached around" Giordano:

"He [Cartellone] grabbed him [Gior-

dano] enough to say, let's move on. He directed him towards the car. However, a friend would do that for a friend.

"Q. And he [Cartellone] was in fact tugging him towards the car, is that correct?

"A. No.

"Q. He wasn't tugging?

"A. He was talking him into the car, yes.

"Q. And Mr. Giordano got into the car, did he not?

"A. Yes, he did.

"Q. And you saw Mr. Giordano get into the driver's side, is that correct?

"A. Yes, he did."

With Giordano as driver, Cartellone allegedly fired three shots from the passenger side of the car in Armand's direction. Sharon Mastandrea testified that the car "couldn't have moved more than a couple [of] inches" before the shots were fired.

We hold that this evidence goes well beyond Giordano's mere presence at the scene, and is sufficient to support his conviction as an aider and abettor to Cartellone. Giordano's participation in the crime can be inferred here by his conduct, including a sudden decision to agree to return to the car and drive it away slowly enough for Cartellone to shoot from the moving vehicle in Armand's direction. Moreover, Giordano had sworn that he was going to "get" Armand just a few minutes earlier, and was also the one who tossed a lighted cigarette into Armand's car and accompanied his friend Cartellone as Cartellone followed Armand to Crestwood Avenue. We hold that the prosecution's evidence against Giordano, both direct and circumstantial, if credited by the trier of fact, will support the finding.

Accordingly, Giordano's assignments of error I through IV are overruled.

Assignment of Error No. V

"V. The trial court committed prejudicial error and abused its sound discre-

tion in overruling appellant's motion for a new trial."

Since Giordano's motion for a new trial was made on the grounds of insufficient evidence, our analysis of his first four assignments of error is dispositive of this assignment of error also.

Giordano's fifth assignment of error is overruled.

Assignment of Error No. VI

"VI. The trial court committed prejudicial error and abused its sound discretion in overruling appellant's motion for a separate trial."

For his final assignment of error, Giordano urges that he was prejudiced by the court's refusal to grant his motion for a separate trial from co-defendant Cartellone.

Under Crim. R. 8 and 14, two defendants may be jointly indicted and tried for a non-capital offense. However,

"If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires." (Crim. R. 14, relief from prejudicial joinder.)

The burden of showing prejudice falls on the movant, with the decision whether to grant or deny the motion being reserved to the court's discretion. "Absent some abuse of discretion, to be demonstrated by a clear showing of prejudice and the consequent denial of a fair trial, the determination is not subject to reversal." *State* v. *Perod* (1968), 15 Ohio App. 2d 115, at 120 [44 O.O.2d 249]. See, also, *Cincinnati* v. *Reichman* (1971), 27 Ohio App. 2d 125 [56 O.O.2d 287].

In this case, Giordano specified four grounds in his motion for separate trial, which we will discuss seriatim:

"1. A joint trial implies con-

spiratorial conduct to the prejudice of the moving Defendant."

This charge is unfounded. Whether tried together with Cartellone or separately, Giordano was being tried as an *accomplice* to the principal, Cartellone. Thus, the same evidence to support Cartellone's conviction would necessarily be introduced to support Giordano's conviction.

"2. That the defense of co-defendants will be antagonistic to the defendant, Louis Giordano, because co-defendant Anthony Cartellone made a written statement concerning various facts which named and involved defendant Louis Giordano."

There is no evidence on the record of this "antagonism" between the co-defendants, nor was any "statement" by Cartellone implicating Giordano ever admitted into evidence. On the contrary, Cartellone's testimony and that of his wife Laura corroborated Giordano's testimony, which, if anything, should have helped Giordano's own case.

"3. A separate trial in this jury case is necessary to avoid causing the jurors difficulty in applying the evidence and remembering what evidence applies to what defendant."

Following the overruling of his motion for a separate trial, Giordano waived his right to a trial by jury, as did Cartellone. Thus, the case was tried before a judge, rendering this argument moot. However, Giordano's position on appeal is that because his motion was overruled he felt compelled to waive a trial by jury for the reasons given above. We disagree. The so-called "difficulties" facing a jury hearing this case would be based upon the application of the legal definition of "aiding and abetting" to Giordano's (as distinct from his alleged principal Cartellone's) conduct. We do not agree with Giordano's speculation that a jury would be unduly hampered in evaluating the testimony in light of these legal distinctions. Moreover, as the court said in *Cincinnati* v. *Reichman, supra*:

"The facts of each particular case must determine whether the court abuses its discretion in not granting a separate trial on the motion of a codefendant. Abuse of discretion in refusing a separate trial must affirmatively appear from the record." (*Id.* at 128.)

In the case *sub judice,* the court's *competence* to hear the evidence and apply the law according to the weight he chose to give to that evidence is undisputed. That a jury could not have done likewise is pure speculation unsupported by the record of this trial.

"4. The Ohio Constitution, Article I, Section 10 entitled 'Trial for Crimes; Witnesses' reveals the following rights of an accused:

" 'In any trial, in any court, the party accused shall be allowed to meet the witnesses face to face, and to have compulsory process to procure the attendance of witnesses in his behalf. No person shall be compelled in any criminal case to be a witness against himself.' "

For his final point, Giordano argues — once more in the hypothetical — that prejudice arises from a conflict between the right to confront witnesses and being tried with another defendant who cannot be compelled to testify against himself. This point is rendered moot by the fact that Cartellone did testify — and that his testimony, if believed, would have inculpated Giordano as well as himself.

Giordano having made no affirmative demonstration of prejudice resulting from the court's refusal to grant him a separate trial, his sixth assignment of error is overruled.

Finally, we note that since Giordano's principal Cartellone can be convicted of only one count of felonious assault under the circumstances, it follows that Giordano as aider and abettor can likewise be convicted of only one count under R.C. 2923.03(F), which reads:

"Whoever violates this section is guil-

ty of complicity in the commission of an offense, and shall be prosecuted *and punished* as if he were a principal offender. * * *'' (Emphasis added.)

While Giordano has not raised this issue, under the "plain error" rule, Crim. R. 52(B), we take notice of this matter as affecting his substantial rights in that, "but for the error, the outcome of the [case] clearly would have been otherwise." *State* v. *Long* (1978), 53 Ohio St. 2d 91 [7 O.O.3d 178], paragraph two of the syllabus.

Accordingly, appellant Giordano's conviction on the first count of felonious assault upon Armand Mastandrea is hereby affirmed. Giordano's convictions on the second and third counts of felonious assault upon Sharon and Dawn Mastandrea, respectively, are hereby remanded to the trial court with instructions to vacate.

*Judgment accordingly.*

DAY and CELEBREZZE, JJ., concur.