JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal by appellant Andre Peavy from his conviction for trafficking in cocaine, following a jury trial before Judge David T. Matia. He asserts that the jury was given an incorrect instruction on the elements of the offense and that the verdict was against the manifest weight of the evidence. On a reversal of manifest weight of the evidence, a unanimous concurrence of all three judges is required. Since only two judges would find it appropriate to reverse the jury verdict we are, therefore, required to affirm the judgment of the lower court.
{¶ 2} From the record we glean the following: At about 4:30 p.m. on May 9, 2001, because of numerous complaints about drug sales in the area, Cleveland Police Officer Gerald Sowul and his partner were working undercover in an unmarked van parked at the corner of East 116th Street and Lardet Avenue. Through the one-way glass back windows of the van, he noted a maroon GMC Jimmy driving southbound on East 116th and saw its driver, later identified as Ivory Stanton, waving at two men, later identified as Peavy and Curtis Jones, on the east side of the street.
{¶ 3} The GMC Jimmy, with Stanton at the wheel and Tondilia (aka Tondelia) Collins in the front passenger seat, stopped ten to fifteen feet directly behind the van and Peavy and Jones walked across East 116th Street to the passenger side of the GMC Jimmy. Sowul stated he saw Jones take something from his pocket which he showed to the occupants and enter the back seat. Peavy walked up and down the sidewalk, never more than ten feet away from the vehicle and, in the opinion of Officer Sowul, was looking up and down the street as though he was acting as a look-out for Jones, and scanning the street for the presence of law enforcement personnel. When Jones entered the back seat of the car, Officer Sowul stated he observed, for approximately thirty seconds, Stanton giving money to Jones and Jones placing an object in Stanton's hand. When Jones got out of the GMC Jimmy, it pulled away from the curb and continued southbound on East 116th and Jones and Peavy continued to walk north.
{¶ 4} Officer Sowul then advised other members of this drug-activity sweep operation that he had just witnessed a drug transaction. Officer Kevin Grady and his partner, in a zone car, drove up East 116th Street, detained Peavy and Jones, and arrested Peavy on an open arrest warrant stemming from a pending disorderly conduct charge. With Peavy and Jones in his car, Officer Grady drove by Officer Sowul's van to have him verify that they were the ones participating in the suspected drug transaction with Stanton, and he then drove them to the Fourth District Police Station.
{¶ 5} Officer Raymond Francel and his partner, in a second zone car, forced the GMC Jimmy to the curb as it turned right from East 116th onto Parkhill Avenue by pulling in front of it. He saw the occupants making what he described as furtive movements in the direction of the central armrest compartment of the truck, and he ordered them to get out. A search of the vehicle revealed a glass crack pipe, later confirmed to contain cocaine residue, and Stanton and Collins were placed under arrest.
{¶ 6} While Stanton was being booked at the Fourth District Police Station, officers recovered another crack pipe from his shoe and, after quite a struggle involving several officers and the use of mace, a rock of crack cocaine was found in his mouth.
{¶ 7} In Cuyahoga County Case CR410047, Stanton was charged with two counts of drug possession, and Jones and Peavy were each indicted on one count of drug trafficking, a felony of the fifth degree, and one count of possession of criminal tools,[1] in violation of R.C.2923.24, a felony of the fifth degree.
{¶ 8} The jury found Peavy guilty of the trafficking charge but acquitted him on the possession of criminal tools. He was sentenced to twelve months in prison and a suspended $1,000 fine, advised of post-release control and had his driver's license suspended for one year.
{¶ 9} Peavy's first assignment of error states:
 {¶ 10} I. The Trial Court Erred When it Failed to Instruct the Drug Trafficking Imposes the Additional Element That Possession of the Controlled Substance Is Incident to Drug Trafficking.
{¶ 11} In State v. Arrington,[2] this court held that possession of drugs is an element of trafficking under R.C. 2925.03, and Peavy argues here, as he did below, that in order to find him guilty of the charge, the judge was required to instruct the jury that it had to find that he possessed the cocaine that formed the basis of the trafficking allegation. We disagree.
{¶ 12} R.C. 2925.03 prohibits the trafficking of drugs:
 {¶ 13} (A) No person shall knowingly do any of the following:
 {¶ 14} (1) Sell or offer to sell a controlled substance;
 {¶ 15} (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person.
{¶ 16} Under R.C. 2923.03, in relevant part,
 {¶ 17} (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
{¶ 18} * * *
 {¶ 19} (2) Aid or abet another in committing the offense;
{¶ 20} * * *
 {¶ 21} (C) No person shall be convicted of complicity under this section unless an offense is actually committed, but a person may be convicted of complicity in an attempt to commit an offense in violation of section 2923.02 (Attempt) of the Revised Code.
{¶ 22} * * *
 {¶ 23} (F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.
{¶ 24} Aid means to help, assist or strengthen. Abet means to encourage, counsel, incite or assist.[3] * * * [A] defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission, even though the indictment is "stated * * * in terms of the principal offense" and does not mention complicity. R.C.2923.03(F) adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense.[4]
{¶ 25} Peavy contended at trial that no evidence established that he had possession of the rock of crack cocaine and, if the jury would have been instructed that it had to find such possession, he would have been acquitted. Requested jury instructions should ordinarily be given if they are correct statements of law that are applicable to the facts in the case, and reasonable minds might reach the conclusion sought by the specific instruction.[5]
{¶ 26} An appellate court reviews whether a refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case.[6] The term abuse of discretion connotes more than an error of law or judgment; it implies that the judge's attitude is unreasonable, arbitrary or unconscionable.[7] A judge commits an abuse of discretion in issuing a decision that is without a reasonable basis or is clearly wrong.[8]
{¶ 27} In this case, Patrolman Sowul testified that Jones was the actual seller of the cocaine, and Peavy's behavior indicated he was a look-out. The State's theory throughout the prosecution of this case was that Peavy's role in the drug sale was that of an accomplice. The judge gave the jury instructions on the crime of drug trafficking as well as the potential liability of an aider or abettor. The State met its burden to show possession incident to trafficking, pursuant to the rule set out in State v. Arrington, supra, when it established Jones's possession of crack cocaine through his role in its sale to Stanton. There was no abuse of discretion in refusing to give an instruction relative to Peavy's possession of any drug, and this assignment of error is without merit.
 {¶ 28} II. The Trial Court Erred in its Judgment Because the Jury's Verdict Was Against the Manifest Weight of the Evidence.
{¶ 29} In evaluating a challenge to the verdict based on the manifest weight of the evidence presented at trial, a court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misinterpretation or misapplication of the evidence by a jury which has lost its way.[9] This power is subject to strict and narrow constraints.
{¶ 30} Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief'" * * *
{¶ 31} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.[10]
{¶ 32} Aiding and abetting contains two basic elements: an act on the part of the defendant contributing to the execution of a crime and the intent to aid in its commission.[11] Both direct and circumstantial evidence may be introduced to establish the aiding and abetting elements of complicity.[12] Mere presence during the commission of a crime, however, does not necessarily amount to being an accomplice.[13]
Indeed, (M)ere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not an aiding or abetting of the act.[14] Being present during the commission of a crime, absent some preceding connection with the transaction or conspiracy is not aiding or abetting.[15] Was there evidence that Peavy incited, procured, or encouraged the drug trafficking, or assisted or enabled Jones in the act?[16]
{¶ 33} Peavy walked with Jones and crossed E. 116th with him. When Jones entered the back seat of the GMC Jimmy, Peavy paced back and forth looking around for about thirty seconds and, when Jones exited the vehicle, he continued to walk with him. There was no other evidence that he assisted or encouraged Jones to sell any drugs or that he had any duty to object to that activity. Because the transaction was taking place in an enclosed vehicle over a very short span of time, his walking up and down and looking around is subject to several interpretations. Officer Sowul believed that Peavy was looking around in order to let Jones know that law enforcement personnel were nearby, although he did not testify how that would enable Jones to sell drugs inside a legally parked ordinary vehicle at 4:30 p.m. on a day in early May. This court has generally required more than one's presence during a crime as evidence of conspiracy or aiding or abetting.
{¶ 34} Other cases from this district have required affirmative acts on the part of a defendant connecting him to the crime apart from mere presence. In State v. Nievas,[17] the defendant drove his brother to a parking lot where, from the car, drugs were sold. In State v. McSwain,[18] the defendant's home contained stolen property and there was testimony that he attempted to open a cash register. In In re Shepherd,[19] a defendant, standing on a tree lawn and observing crimes in progress, was found to have aided attempted murder, aggravated robbery and felonious assault by making statements after the offenses had been completed evidencing participation. In State v. Cartellone,[20] the defendant followed the victim's car, pulled up along side so that his passenger could throw a lighted cigarette into the victim's dashboard, stopped at the victim's residence where his passenger continued his quarrel with the victim, and then drove away slowly enough for his passenger to fire three shots in the victim's direction. Finally, in In re Swift, the defendant acted as a lookout, then kicked the robbery victim and searched his pockets.[21]
{¶ 35} Criminal intent can be inferred from an accused's presence, companionship, and conduct both before and after the offense.[22] The State, however, armed with only circumstantial evidence, was required to prove beyond a reasonable doubt that Peavy knowingly[23] aided or assisted in the sale of a controlled substance. An appellate court will reverse a conviction based solely on circumstantial evidence where the evidence does not, as a matter of law, preclude all reasonable theories of innocence.[24]
{¶ 36} If believed, Officer Sowul's testimony established that Jones and Stanton had consummated a drug transaction and that Peavy's behavior was strongly indicative of his cooperation as a look-out with full knowledge of Jones's activities. Peavy's presence and pacing could also indicate a chance meeting, a sudden awareness that Jones was going to sell drugs to someone Jones knew, and Peavy's desire to avoid involvement should police appear. Similarly, his pacing and head movements could indicate his knowledge that there was an arrest warrant for him or even a nervous habit. Peavy had no drugs on him at his arrest, he had no verbal communications with Jones or the vehicle occupants after he crossed the street, and the jury found that his $138 was not a criminal tool or evidence of trafficking in drugs. Without evidence that Peavy provided Jones with some level of active participation that enabled Jones to sell drugs, his pacing and head movements will not support a conviction under R.C. 2923.03.
{¶ 37} However, Section 3(B)(3), Article IV of the Ohio Constitution provides:
 {¶ 38} "A majority of the judges hearing the cause shall be necessary to render a judgment. Judgments of the courts of appeals are final except as provided in section 2(B)(2) of this article. No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause."
{¶ 39} The Ohio Supreme Court has interpreted this section of the Ohio Constitution to mean that, where a Court of Appeals finds it appropriate to reverse a jury verdict based on the manifest weight of the evidence, all three judges must concur in reversal; otherwise, the verdict must stand.[25] As the Court stated in State v. Thompson, To reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required. (Section 3[B][3], Article IV of the Ohio Constitution, construed and applied.)[26] Accordingly, because Judge Celebrezze had dissented from the majority's determination that the jury's verdict was against the manifest weight of the evidence, the verdict must stand.[27]
Judgment affirmed.
It is ordered that the appellee recover from appellant costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., CONCURS, FRANK D. CELEBREZZE, JR., J., CONCURS IN JUDGMENT ONLY (SEE ATTACHED CONCURRING OPINION.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc. App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E), unless a motion for reconsideration with supporting brief, per App.R. 26(A) is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] At the time of arrest, Peavy was found to be in possession of $138 in cash. The State asserted at trial that this money was the fruit of his trafficking activities.
[2] (1990), 64 Ohio App.3d 654, 582 N.E.2d 649.
[3] See 4 Ohio Jury Instructions (2000) 573, Sections 523.03(8) and 523.03(9).
[4] State v. Herring, 94 Ohio St.3d 246, 251, 2002 Ohio 796,762 N.E.2d 940 (internal cite omitted).
[5] Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591,575 N.E.2d 828.
[6] State v. Wolons (1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443.
[7] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
[8] Pembaur v. Leis (1982), 1 Ohio St.3d 89, 437 N.E.2d 1199.
[9] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541.
[10] State v. Thompkins, supra at 387, 1997-Ohio-52, 678 N.E.2d 541, (internal cites omitted).
[11] State v. Jacobs, (Sept. 30, 1999), Hancock App. No. 5-99-17, citing State v. Sims (1983), 10 Ohio App.3d 56, 58, 460 N.E.2d 672.
[12] Jacobs, supra, citing State v. Cartellone (1981), 3 Ohio App.3d 145,150, 444 N.E.2d 68.
[13] Jacobs, supra, citing State v. Widner (1982), 69 Ohio St.2d 267,269, 431 N.E.2d 1025.
[14] State v. Sims (1983), 10 Ohio App.3d at 59. (Internal citation omitted.)
[15] Sims, supra.
[16] Id.
[17] (1997), 121 Ohio App.3d 451.
[18] (1992), 79 Ohio App.3d 600.
[19] (Dec. 14, 2000), Cuyahoga App. No. 5881.
[20] (1981), 3 Ohio App.3d 145.
[21] Cuyahoga App. No. 79610, 2002-Ohio-1276.
[22] Cartellone, supra.
[23] R.C. 2901.22(B): A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.
[24] State v. Jacobozzi (1983), 6 Ohio St.3d 59, 61.
[25] State v. Thompson, 78 Ohio St.3d 380, 1997-Ohio-52.
[26] 78 Ohio St.3d 380, 381, 1997-Ohio-52, paragraph four of the syllabus.
[27] Id., See also State v. Rhodes, (1992), 63 Ohio St.3d 613,615, State v. Webber (Aug. 23, 2000), Medina App. No. 3001-M, State v. McCalister (Jan. 10, 1996), Summit App. No. 17088.