OPINION.
{¶ 1} Appellant Jason Maske appeals from his conviction for involuntary manslaughter in the Stark County Court of Common Pleas. The relevant facts leading to this appeal are as follows.
 {¶ 2} At approximately 2:30 AM on April 4, 2002, a number of patrons of "The Pub" in the Belden Village district of Jackson Township were making their way to the parking lot as the tavern began closing for the night. Three of the patrons, Kristen Somers, Angie Allen, and Leanne Howard planned to leave in Ms. Howard's car. As they proceeded to Ms. Howard's vehicle, Nate Laster, who had driven a Pontiac Fiero that night, approached the three women and began conversing with them. At that time, Summer Smith and Amy Nivert, acquaintances of appellant and co-defendant Terrence Jacocks, attempted to leave the parking lot in their car. Believing they were blocked by Laster's Fiero, they asked him to move the car so they could depart. Laster refused, which led to a verbal altercation. Appellant and Jacocks intervened, and the situation developed into a physical fight. As these events unfolded, Woodrow Washington, another Pub patron that night, pulled up and went to the trunk of his Chevrolet Corvette, appearing to dig an item out. He then walked toward the crowd and became involved in the developing melee. However, Washington lost his footing during the altercation, falling backwards and striking his head on the pavement.
 {¶ 3} According to Somers and Allen, after Washington went down, appellant, Jacocks, and a third man, Donta Mustin, began kicking and stomping him about the chest and head. Allen likened the blows to a child on a trampoline. Somers yelled to the three men that they were going to kill Washington. The three stopped the attack, but began "jumping around," in Somers' words. Allen and Somers both heard appellant yell "I'm a killer!" However, according to Ms. Smith, who had dated appellant in the past, appellant merely walked over to Washington during the altercation and kicked him once in the shoulder and neck area, but moved away with Smith when she grabbed his arm. A bystander happened to be a licensed EMT. Together with some of the witnesses and the tavern's manager, she assisted the bleeding and unconscious Washington until paramedics arrived.
 {¶ 4} Appellant, Jacocks, and Mustin departed in two other vehicles. One of the witnesses took down one of the license plate numbers. Appellant was arrested later that day and charged with felonious assault. However, prior to presentment of charges to the Grand Jury, Woodrow Washington died without regaining consciousness. Appellant and co-defendants Jacocks and Mustin were thereafter each indicted for murder, R.C. 2903.02(B). The matter proceeded to a joint jury trial with the three men as co-defendants. In addition to eyewitness testimony, the State presented crime lab evidence that DNA from the blood smears on appellant's shoes matched the DNA in Washington's blood. The State also called as a witness Stark County Chief Deputy Coroner P.S.S. Murthy, who concluded Washington's death was a homicide. During the defense phase, appellant called his own medical expert, Summit County Coroner William Cox.
 {¶ 5} On September 25, 2002, the jury found appellant not guilty of murder, but guilty of the lesser included offense of involuntary manslaughter predicated upon aggravated assault. Co-defendant Jacocks was also found not guilty of felony-murder, but guilty of involuntary manslaughter predicated upon aggravated assault. Mustin was acquitted.
 {¶ 6} On October 9, 2002, the court sentenced appellant to ten years in prison.
 {¶ 7} Appellant filed a notice of appeal on October 11, 2002. He herein raises the following three Assignments of Error:
 {¶ 8} "I. The appellant's rights to due process and a fair trial were violated by the prosecuting attorney's failure to disclose exculpatory evidence.
 {¶ 9} "II. The appellant was denied the effective assistance of counsel when his trial attorneys failed to request that the appellant be tried separately from his co-defendants.
 {¶ 10} "III. The trial court committed plain error when it did not order separate trials for the appellant and his co-defendants.
 I. {¶ 11} In his First Assignment of Error, appellant contends he was deprived of a fair trial based on the prosecutor's alleged withholding of exculpatory evidence. We disagree.
 {¶ 12} Crim.R. 16(B)(1)(f) reads: "Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment. * * *." In Brady v. Maryland
(1963), 373 U.S. 83, the United States Supreme Court held that the "[s]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To establish a violation, a defendant must prove that the prosecution failed to disclose evidence upon request, the evidence was favorable to the defense, and the evidence was material. State v.Garn (Feb. 21, 2003), Richland App. No. 02CA45, citing Moore v. Illinois
(1972), 408 U.S. 786.
 {¶ 13} In the case sub judice, appellant argues that certain evidence about Washington's observed actions during the Pub altercation came to light during the State's case-in-chief. According to Kristen Somers' testimony, she saw Washington "slip and fall" backwards on the pavement after becoming involved in the altercation between the three co-defendants and Laster. Tr. at 517. Angie Allen similarly observed a "slip and fall." Tr. at 1034. Leanne Howard recalled at trial that Washington was "jumped" by two black males but tripped and fell on his own. Tr. at 1496.[1] None of these three witnesses provided this information in their statements to the Jackson Township Police. Appellant also notes a second nondisclosure in the form of Ms. Somer's testimony before the Grand Jury that Washington originally had a beer bottle in his hand and threw it during the altercation. Appellant contends the information about a slip and fall event with an accompanying injury to Washington's head "could have led the deputy coroner to rule the victim's death an accidental one instead of a homicide." Appellant's Brief at 12. Moreover, appellant proposes, the aforecited nondisclosure prevented defense counsel from properly questioning on cross-examination Dr. Kirby Sweitzer, the emergency room physician who first treated Washington.
 {¶ 14} The crux of appellant's argument relates to the materiality element of Brady. "[T]he test of Brady materiality is whether there exists a reasonable probability that the result would have been different had the evidence been disclosed to the defense." State v. Franklin, Montgomery App. No. 19140, 2002-Ohio-6193, citing State v. LaMar (2002),95 Ohio St.3d 181, 187, 2002-Ohio-2128. Appellant suggests that earlier disclosure of the "slip and fall" grand jury testimony, as well the testimony by Somers pertaining to Washington's grasping of a beer bottle after he went to his trunk, would have changed the nature of the case. Appellant contends the non-disclosure impacted his cross-examination of Chief Deputy Coroner Murthy and Dr. Swartz. He particularly notes the following exchange at trial:
 {¶ 15} "MR. LODICO [COUNSEL FOR MR. JACOCKS]: With regard to the information that police officers and investigators give you, you have to rely on what's provided to you; correct, Doctor?
 {¶ 16} "DR. MURTHY: Yes, we are entitled for the information.
 {¶ 17} "Q: Okay. You don't go out yourself and interview witnesses?
 {¶ 18} "A: No.
 {¶ 19} "Q: Okay. Now, Doctor, if someone came to you and said or you had been provided with information saying that this individual slipped, fell to the ground and hit his head, would that have had any impact on your determination of cause of death in this case?
 {¶ 20} "A: The determination of the cause of death here is due to the complications.
 {¶ 21} "Q: Okay, let me rephrase my question. Your ruling on this case, would your ruling change if somebody told you that this individual had slipped, fallen, and hit their head?
 {¶ 22} "A: Repeat it one more time.
 {¶ 23} "Q: If you had received information that a witness saw an individual slip and fall and hit their head, would that have any impact on your ruling in this case as to whether it's homicide or possibly accidental?
 {¶ 24} "A: If the history is that an individual slipped and fell and hurt his head and died of a complication, in that situation myself as the Chief Deputy Coroner as well as I can speak for the Coroner, he would have ruled it as accidental death.
 {¶ 25} "Q: Okay." Tr. at 904-905.
 {¶ 26} Having reviewed the testimony of Drs. Murthy and Sweitzer, as well as Dr. Cox, the defense expert, we are unpersuaded that a reversible Brady violation has been demonstrated under the facts and circumstances of this case. The medical testimony supported the conclusion that it was the cumulative effect of the blows delivered to Washington that caused him to go into the coma from which he never recovered. Moreover, the "accidental death" hypothetical of Dr. Murthy recited above does not reflect the cumulative trauma scenario portrayed by several eyewitnesses in the case sub judice. We thus do not find a reasonable probability that the result would have been different had the aforecited grand jury testimony of Somers, Allen, and Howard been disclosed earlier.
 {¶ 27} Furthermore, we note the trial court helped remedy anyBrady concerns by allowing defense counsel to review the grand jury testimony of Somers, Allen, and Howard and by permitting the recall of Chief Deputy Coroner Murthy and treating physician Dr. Sweitzer. "[A] trial court has discretion to determine what sanction is appropriate when the state fails to disclose discoverable material." State v. Curry
(Sept. 22, 1999), Licking App. No. 99CA40, citing State v. Wiles (1991),59 Ohio St.3d 71, 78, and State v. Parson (1983), 6 Ohio St.3d 442, 445. Upon review of the record, we find no abuse of discretion in the trial court's handling of the discovery issues which arose during the trial of the matter sub judice.
 {¶ 28} Accordingly, appellant's First Assignment of Error is overruled.
 II. {¶ 29} In his Second Assignment of Error, appellant argues he was deprived of the effective assistance of counsel at trial. We disagree.
 {¶ 30} Our standard of review is set forth in Strickland v.Washington (1984), 466 U.S. 668. Ohio adopted this standard in the case of State v. Bradley (1989), 42 Ohio St.3d 136. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Id. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998),81 Ohio St.3d 673, 675.
 {¶ 31} Appellant specifically argues that trial counsel was ineffective for failure to seek severance from the other two co-defendants. In analyzing issues of severance, the general rule is that the defendant bears the burden under Crim.R. 14 to prove prejudice and that the trial court abused its discretion in denying severance. Statev. Coley (2001), 93 Ohio St.3d 253, 2001-Ohio-1340, citing State v.Torres, 66 Ohio St.2d 340, syllabus. In State v. Thomas (1980),61 Ohio St.2d 223, 225, the Ohio Supreme Court noted: "Joinder of defendants and the avoidance of multiple trials is favored in the law for many reasons. Joinder conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." Hence, "[j]oinder of defendants is the rule rather than the exception and the burden is on the defendant to establish any resulting prejudice." State v. Fannin, Cuyahoga App. No. 80014, 2002-Ohio-4180 (citations omitted).
 {¶ 32} Appellant argues that his counsel was ineffective because the decision not to request a severance of co-defendants "resulted in the jury hearing testimony regarding the actions of Mr. Jacocks, thereby allowing them to infer that if Mr. Jacocks was having a violent physical confrontation with Mr. Washington, then the appellant must also have had a similar violent confrontation." Appellant's Brief at 16. However, in the case sub judice, there were a number of witnesses at the scene, including two who specifically recalled appellant shouting "I'm a killer," thus diminishing the likelihood of the jurors attributing the guilt of one co-defendant with another. Moreover, in the end the jurors were able to sort out the evidence such that Mustin was acquitted. Furthermore, the record reveals the state indicated during pre-trial that it would refrain from introducing appellant's and co-defendant's purported incriminating statements to police during its case-in-chief, suggesting an incentive for defense counsel to leave the three co-defendants joined. See Judgment Entry, July 24, 2002. It is well-established that tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558.
 {¶ 33} Upon review of the record, we are unpersuaded that appellant was deprived of the effective assistance of trial counsel. Appellant's Second Assignment of Error is therefore overruled.
 III. {¶ 34} In his Third Assignment of Error, appellant contends the trial court committed plain error by failing to order separate trials for appellant and his two co-defendants. We disagree.
 {¶ 35} Error not raised in the trial court must be plain error in order to reverse. State v. Johnson (Nov. 19, 1998), Richland App. No. 98-CA-42, citing State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. Id. Plain error does not exist unless but for the error, the outcome of the trial would clearly have been otherwise. State v.Nicholas (1993), 66 Ohio St.3d 431, 613 N.E.2d 225.
 {¶ 36} "`Absent some abuse of discretion, to be demonstrated by a clear showing of prejudice and the consequent denial of a fair trial, the [severance] determination is not subject to reversal.'" See State v.Cartellone (1981), 3 Ohio App.3d 145, 151, quoting State v. Perod
(1968), 15 Ohio App.2d 115, 120. As per our discussion in response to appellant's Second Assignment of Error, supra, in light of the record before us, even if defense counsel had moved for severance, the trial court would not have abused its discretion in overruling the motion. Cf.State v. Hunter (Nov. 25, 1998), Ashland App. No. 98-COA-01242.
 {¶ 37} We are therefore disinclined to invoke the doctrine of plain error under the facts and circumstances of this case. Appellant's Third Assignment of Error is overruled.
 {¶ 38} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
Wise, J., Hoffman, P.J., and Farmer, J., concur.
[1] Howard explained this discrepancy by testifying that she used the phrase "he was knock[ed] out" to the police, intending to convey to the officers that Washington was knocked out by hitting the ground. See Tr. at 1626.