JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Bryan Galloway, appeals from the judgment of the Common Pleas Court finding him guilty of felonious assault with a firearm specification and having a weapon while under a disability and sentencing him to 16 years incarceration. For the reasons that follow, we affirm.
 {¶ 2} The Cuyahoga County Grand Jury indicted appellant on one count of attempted murder with one- and three-year firearm specifications, two counts of felonious assault with one- and three-year firearm specifications, and one count of having a weapon while under a disability. Appellant pleaded not guilty and counts one, two and three proceeded to a jury trial; count four was tried to the bench.
 {¶ 3} Darnell Martin testified at trial that he arrived at the home of Charles Lloyd, an "after-hours [drinking] spot," at approximately 3:00 a.m. on July 24, 2004. Darnell went downstairs, where he saw a woman sitting on Michael Wilson's lap. The woman jumped up and gave Darnell a hug. After he got a drink, Darnell went back upstairs. Shortly after, as he was walking down the driveway with the woman he had seen downstairs, Wilson came up to Darnell and knocked his drink out of his hand. According to Darnell, he and Wilson then started "boxing" in the driveway.
 {¶ 4} Darnell testified that appellant and Lloyd stood outside watching the fight, and appellant coached Wilson during the fight on how to beat him. At one point, appellant shoved Darnell's younger brother, Ishmael, who then called Darnell's other two brothers and advised them that Darnell was being "jumped."
 {¶ 5} Darnell testified that when his brothers arrived on the scene a few minutes later, he told them that the fight was just between him and Wilson. When Wilson began running down the street, Darnell and others chased him. Appellant stayed at Lloyd's house, arguing with David Martin, one of Darnell's brothers. When Darnell saw appellant take a swing at his brother, he and the others, including Wilson, returned to Lloyd's house, and Darnell told appellant, "If you've got a problem, we can fight."
 {¶ 6} Darnell testified that appellant seemed upset that he (Darnell) had "gotten the best of Wilson," and he heard appellant ask Wilson, "What are you going to do?" and then tell him, "You'd better do something. You better get him." Darnell then heard appellant tell Lloyd, "Go get a gun." According to Darnell, Lloyd went into his house, and returned several minutes later holding a gun and a bulletproof vest, which he put on. Lloyd then handed the gun to appellant.
 {¶ 7} According to Darnell, appellant and Wilson then began arguing about who was going to shoot him. Wilson tried to grab the gun from appellant, but appellant told him, "No, I will do it." After Wilson told appellant, "F____ it, you don't like this nigga anyway," appellant said, "Hell, yeah," and handed the gun to Wilson, who immediately pointed the gun at Darnell and shot him in the neck. Darnell testified that as a result of the shooting, he has residual nerve damage that causes his right hand to shake.
 {¶ 8} On cross-examination, Darnell admitted that he was a drug and cocaine addict. He admitted further that he was intoxicated during the events of July 24, 2004, although he denied that he had used cocaine that day. Finally, Darnell admitted that he "had some resentment" against appellant because appellant was the State's sole witness against him during his 1998 trial on a charge of aggravated murder. The case was ultimately dismissed for lack of evidence.
 {¶ 9} David Martin, Darnell's younger brother, testified that he went to Lloyd's house the morning of July 24, 2004 after he received a telephone call informing him that Darnell was "getting jumped." When he arrived, David saw Darnell and Wilson wrestling on the ground. David testified that he saw Lloyd come out of his house and put an object that looked like a gun down the front of his pants and then hand a gun to appellant. According to David, Wilson said, "Give me the gun; I'll shoot him." Appellant handed the gun to Wilson, who immediately raised it and shot Darnell. David ran away when he heard the shot.
 {¶ 10} Cleveland police officer Richard C. Adams testified that at approximately 5:10 a.m. on July 24, 2004, he responded to a radio broadcast reporting a large crowd in front of Lloyd's house. When he arrived, the only person he saw, however, was appellant, who was standing at the side door of the home, trying to get in. Adams observed that appellant, who was shirtless, had scratches on his back. Appellant told Adams that he got the scratches when he hid in the bushes after hearing a loud gunshot. Appellant told Adams that he did not know who had the gun because there had been a large crowd of people who were fighting.
 {¶ 11} A short time later, David Martin appeared on the scene, looking for Darnell's car keys. Adams arrested appellant after speaking with David Martin and learning from a radio dispatch that a shooting victim was being treated at the hospital.
 {¶ 12} Cleveland police detective Joseph Daugenti testified that he took a written statement from appellant on July 26, 2004. In that statement, appellant asserted that Darnell and Wilson got into a fight at Lloyd's house. After several people broke up the fight, Darnell called his brothers, David and Yusef Martin, who arrived a short time later. David was carrying a gun. According to appellant, "all three * * * were trying to get at Michael [Wilson]," so he grabbed David and Yusef and they fell against the house. As he held them off, Darnell and Wilson began fighting again. The fight moved up the street and then back again to Lloyd's house.
 {¶ 13} Appellant then told Lloyd to get a gun. As appellant walked down the driveway holding the gun behind his back, Wilson grabbed it from him. As appellant was fighting with David, he heard a shot and then saw Darnell walking down the driveway. David then told appellant, "He just shot my brother; if you don't get out of my way, I'm going to shoot you," so appellant took off running.
 {¶ 14} The jury subsequently found appellant not guilty of attempted murder, but guilty of both counts of felonious assault and the firearm specifications. The trial court found appellant guilty of having a weapon while under a disability.
 {¶ 15} At sentencing, the trial court found that the firearm specifications merged for purposes of sentencing.[1] The court sentenced appellant to eight years incarceration on each of the felonious assault charges, three years on the firearm specifications, and five years on the charge of having a weapon while under a disability. The court ordered that the eight-year sentences on the felonious assault charges be served concurrently, but consecutive to three years for the firearm specifications and five years for having a weapon under a disability, for a total of 16 years incarceration.
 SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE {¶ 16} In his first assignment of error, appellant contends that there was insufficient evidence to support his convictions. In his second assignment of error, appellant argues that the verdicts were against the manifest weight of the evidence.
 {¶ 17} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 18} Appellant was convicted of felonious assault and having a weapon while under a disability. R.C. 2903.11, regarding felonious assault, provides:
 {¶ 19} "(A) No person shall knowingly do either of the following:
 {¶ 20} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 21} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 22} Appellant contends that there was insufficient evidence to convict him of felonious assault because Wilson pulled the trigger and there was no evidence that he told Wilson to shoot Darnell or that he encouraged him in any way.
 {¶ 23} Accomplices to a crime may be punished as if they were the principal offenders. State v. Coleman (1988), 37 Ohio St.3d 286, paragraph two of the syllabus. R.C. 2923.03, the complicity statute, provides that "no person, acting with the kind of culpability required for the commission of an offense, shall * * * aid or abet another in committing the offense[.]" R.C. 2923.03(A)(2).
 {¶ 24} In State v. Peavy, Cuyahoga App. No. 80480, 2002-Ohio-5067, at ¶ 32, (citations omitted), this court summarized the law as it relates to the role of an aider or abetter and what must be proven by the State to establish that a defendant did, in fact, aid or abet another in the commission of a crime:
 {¶ 25} "Aiding and abetting contains two basic elements: an act on the part of the defendant contributing to the execution of a crime and the intent to aid in its commission. Both direct and circumstantial evidence may be introduced to establish the aiding and abetting elements of complicity. Mere presence during the commission of a crime, however, does not necessarily amount to being an accomplice. Indeed, `mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not an aiding or abetting of the act.' Being present during the commission of a crime, absent some preceding connection with the transaction or conspiracy is not aiding or abetting." However, criminal intent can be inferred from an accused's presence, companionship and conduct both before and after the offense. State v.Cartellone (1981), 3 Ohio App.3d 145, 150.
 {¶ 26} Here, Darnell Martin testified that he heard appellant tell Lloyd to get a gun, saw Lloyd hand the gun to appellant, and then heard appellant and Wilson argue about who was going to shoot him as they struggled over the gun. Darnell then saw appellant hand the gun to Wilson, who immediately shot Darnell. This evidence, if believed, is sufficient to demonstrate that appellant knowingly aided or abetted Wilson in causing serious physical harm to Darnell by means of a deadly weaon.
 {¶ 27} With respect to having a weapon while under a disability, R.C.2923.13 states:
 {¶ 28} "(A) Unless relieved from disability as provided in section2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
 {¶ 29} "* * *
 {¶ 30} "(3) The person is under indictment or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution or trafficking in any drug of abuse * * *."
 {¶ 31} Appellant argues that there was insufficient evidence to support his conviction for having a weapon under a disability because he did not "acquire, have, carry, or use a firearm in this case, or if he did, it was not for a criminal purpose." Appellant's argument is without merit.
 {¶ 32} In the written statement he gave to Detective Daugenti, appellant admitted that he told Lloyd to get a gun for him and that he walked down the driveway carrying the gun behind his back. Hence, appellant admitted that he did, in fact, "acquire, have, [and] carry" a firearm in this matter. Moreover, Darnell testified that he heard appellant and Wilson arguing about who was going to shoot him as they struggled with each other over the gun. This evidence, in conjunction with State's Exhibit 13, a copy of a journal entry entered by the Cuyahoga County Common Pleas Court on January 10, 2002, finding appellant guilty of trafficking in drugs in violation of R.C. 2925.03 and of possession of drugs in violation of R.C. 2925.11, is sufficient to demonstrate that appellant knowingly had, carried, or used a firearm for a criminal purpose while he was under a disability.
 {¶ 33} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v. Thompkins (1997), 78 Ohio St.3d 380, 390. When considering an appellant's claim that the conviction is against the weight of the evidence, a reviewing court sits essentially as a "`thirteenth juror' and [may] disagree with the fact finder's resolution of the conflicting testimony." Thompkins, supra at 387, quoting Tibbs v.Florida (1982), 457 U.S. 31, 42. The reviewing court must examine the entire record, weighing the evidence and considering the credibility of witnesses, while being mindful that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982), 70 Ohio St.2d 79, 80. The court may reverse the judgment of conviction if it appears that the fact finder, in resolving conflicts in the evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins,78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 34} Appellant argues that the felonious assault verdicts were against the weight of the evidence because "there is no evidence proving the appellant fired the gun or otherwise aided Wilson in doing so." While we agree that appellant did not pull the trigger, as discussed above, there was ample evidence that appellant aided and abetted Wilson in shooting Darnell.
 {¶ 35} Appellant's argument regarding his conviction of having a weapon while under a disability is likewise without merit. Contrary to appellant's contention that there was "absolutely no evidence that [he] intended to use the firearm," Darnell testified that he heard appellant and Wilson arguing about who was going to shoot him and saw them each struggling to get the gun from the other.
 {¶ 36} After reviewing the entire record, weighing the evidence and considering the credibility of the witnesses, we are not persuaded that the jury lost its way and created such a miscarriage of justice that appellant's convictions must be reversed.
 {¶ 37} Appellant's first and second assignments of error are overruled.
 DETECTIVE DAUGENTI'S TESTIMONY {¶ 38} In his third assignment of error, appellant argues that he was denied a fair trial because Detective Daugenti improperly testified regarding the veracity of another witness. Appellant objects to the following colloquy:
 {¶ 39} "PROSECUTOR: All right. Let me ask you a question detective. Prior to speaking with Mr. Galloway, did you have an opportunity to review the report that was made by Officer Adams?
 {¶ 40} "DETECTIVE DAUGENTI: Yes, I did.
 {¶ 41} "PROSECUTOR: And were you aware that Mr. Galloway made a statement to Officer Adams?
 {¶ 42} "DETECTIVE DAUGENTI: Yes.
 {¶ 43} "PROSECUTOR: All right. Having spoken with Mr. Galloway, do you have an opinion as to whether or not the statement given to Officer Adams was consistent with the statement he gave to you?"
 {¶ 44} The trial court denied defense counsel's objection and Detective Daugenti answered:
 {¶ 45} "The statement that the defendant gave Officer Adams was inconsistent with the statement that I took from the defendant."
 {¶ 46} Appellant contends that this statement allowed Detective Daugenti to improperly comment on the veracity of another witness. See, e.g., State v. Huff (2001), 145 Ohio App.3d 555 ("The opinion of a witness as to whether another witness is being truthful is inadmissible.") Appellant mischaracterizes the testimony, however. Detective Daugenti did not comment on the veracity of another witness: his testimony was that he reviewed two statements — -one that appellant made to him and another that appellant made to Officer Adams — and that he found one statement inconsistent with the other. This is proper testimony and the trial court did not err in allowing the detective to so testify.
 {¶ 47} Appellant's third assignment of error is overruled.
 ALLIED OFFENSES OF SIMILAR IMPORT {¶ 48} Appellant next argues that the trial court erred in sentencing him on both the gun specification relative to the felonious assault convictions and the conviction of having a weapon while under a disability because the offenses are allied offenses of similar import and therefore merge for purposes of sentencing.
 {¶ 49} This court addressed a similar argument in State v. Williams,
Cuyahoga App. No. 81949, 2003-Ohio-3950, in which we stated:
 {¶ 50} "The flaw with [appellant's] argument is that he equates a firearm specification with a separate offense. In State v. Willingham
(Feb. 16, 1988), Cuyahoga App. Nos. 54767 and 56464, we stated:
 {¶ 51} "A criminal defendant may not receive multiple punishments when `the same conduct by defendant can be construed to constitute two or more allied offenses of similar import * * *.' R.C. 2941.25(A). However, it is settled law in this district that the specification contained in R.C.2929.71[2] is a sentencing provision, not a separate offense; thus, the specification cannot be an allied offense. State v. Loines (1984),20 Ohio App.3d 69, 72-73; State v. Price (1985), 24 Ohio App.3d 186, 187-189."
 {¶ 52} "Because the gun specification is not a separate offense, it may not be allied with another offense for sentencing purposes."
 {¶ 53} Appellant's fourth assignment of error is therefore overruled.
 CONSECUTIVE SENTENCES {¶ 54} In his fifth and sixth assignments of error, appellant contends that the trial court erred in sentencing him to maximum, consecutive sentences.
 {¶ 55} R.C. 2929.14(C) states:
 {¶ 56} "* * * The court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 57} Thus, as applicable to this case, to impose the maximum sentence, there must be a finding on the record that the offender committed one of the worst forms of the offense or posed the greatest likelihood of recidivism. State v. Hollander (2001), 144 Ohio App.3d 565,569. While the court need not use the exact language of the statute, it must be clear from the record that the trial court made the required findings. Id.
 {¶ 58} Here, in imposing the maximum sentence on the conviction for having a weapon while under a disability, the trial court stated:
 {¶ 59} "Based upon everything I said, the recidivism likely factors, the serious[ness] factors, a maximum sentence would be appropriate of five years for having weapons while under disability.
 {¶ 60} "The worst form of the offense is committed with a gun. You had no business handling a gun."
 {¶ 61} In sentencing appellant to the maximum sentence on the felonious assault convictions, the trial court stated:
 {¶ 62} "Two years, the minimum, is not appropriate. You did commit one of the worst forms of the offense for a felonious assault. You do pose a great likelihood of committing future crimes based upon your past criminal history and all the times you've been to prison. Nothing has seemed to stop you or deter you from committing crimes, and now they have escalated to the most serious. Only by luck is Darnell not dead. As such, the court finds that an eight-year sentence, the maximum, is appropriate for felonious assault."
 {¶ 63} Accordingly, the record is clear that the trial court complied with the requirements of R.C. 2929.14(C) in sentencing appellant to the maximum term of incarceration.
 {¶ 64} With respect to the consecutive sentences imposed in this case, we note that pursuant to statute, the three-year term for the gun specification relative to the felonious assault convictions is to be served consecutively. See R.C. 2941.145. Accordingly, the trial court did not err in ordering that this term be served consecutive to the eight years for the felonious assault convictions.
 {¶ 65} R.C. 2929.14(E)(4) governs the imposition of consecutive sentences. It provides that a court may impose consecutive sentences only when it concludes that the sentence is: 1) necessary to protect the public from future crime or to punish the offender; 2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and 3) one of the following applies: a) the offender committed the offenses while awaiting trial or sentencing, under sanction or under post-release control; b) the harm caused by the multiple offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of the offense; or c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime.
 {¶ 66} Thus, a trial court may impose consecutive prison terms for multiple convictions upon making certain findings as enumerated in the statute. When the trial court does so, however, it must state these findings, and its reasons for those findings, on the record. See R.C.2929.19(B)(2)(c); see, also, State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165.
 {¶ 67} Here, in sentencing appellant, the trial judge noted that appellant had a lengthy criminal record, including three previous prison terms. She noted further that, as a result of the gunshot, the victim had suffered psychological and economic injury, as well as permanent physical injury. She then stated:
 {¶ 68} "Having also considered similar offenses for similar offenders, I find, again based upon what I was saying about having the weapons while under disability, had you not had the gun or asked for the gun at all and violated the rules of being a convicted felon, you wouldn't be in this situation at all. So a five-year consecutive sentence, I find, is appropriate under the circumstances, because the harm was so great or unusual that a single term does not adequately reflect the seriousness of your conduct, and your criminal history shows that consecutive sentences are needed to protect the public, also to punish you, the offender, and because of the danger you pose in the future. The longer you are out of the community, the less likely people will get hurt. So, therefore, it's a total of a 16-year-sentence."
 {¶ 69} We find this sufficient to meet the statutory criteria for imposing consecutive sentences. Although the trial court did not use the exact statutory language, the court specifically found that in light of appellant's criminal history, consecutive sentences were necessary to protect the public. She further found that because appellant had used a gun even though he was a convicted felon, consecutive sentences were not disproportionate to the seriousness of appellant's conduct and the danger he posed to the public. Finally, she found that in light of the seriousness of the victim's injuries, the harm caused was so great or unusual that a single term would not adequately reflect the seriousness of the offenses.
 {¶ 70} Appellant's fifth and sixth assignments of error are therefore overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Rocco, J., concur.
[1] At the sentencing hearing, the trial judge correctly stated that the two felonious assault counts merged for purposes of sentencing. Nevertheless, she sentenced appellant on each of the counts. We find this to be harmless error, however, as the trial judge ordered that the eight-year sentences on the felonious assault convictions be served concurrently.
[2] This was the statutory section regarding firearm specifications prior to Senate Bill 2.