JOURNAL ENTRY AND OPINION
Defendant-appellant James Dowell appeals his conviction entered upon a jury trial in the Cuyahoga County Court of Common Pleas for one count of murder with a firearm specification, a violation of R.C. 2903.02. For the following reasons, we affirm.
At trial, the following facts were established: On the morning of March 6, 2003, Chester Bright was fatally shot once in the chest by the defendant.
Prior to the shooting, defendant and Chester knew each other from working odd jobs at local bars. Both defendant and Chester were characterized as "mentally disabled."
In the early morning hours of March 6, 2003, Chester came to the defendant's house to help him with some house and yard work. Defendant was a coin collector and noticed that some of his coins were missing. Defendant questioned Chester about the missing coins and a fight ensued. Defendant reached for a gun and shot Chester once in the chest. Defendant then put the gun in the basement. Approximately 50 minutes after the shooting, defendant made a 911 telephone call to the Cleveland Police Department.
On March 20, 2003, defendant was indicted on two charges: One count of murder, in violation of R.C. 2903.02 with a firearm specification and one count of having a weapon while under disability, in violation of R.C. 2923.13. Defendant entered a plea of not guilty at his arraignment and his case proceeded to a jury/bench trial.[1]
At trial, the State alleged that defendant purposely caused the death of Chester after getting into an argument with him about the missing coins. Defendant asserted that he was fighting with Chester and did not intend to kill him.
The State first presented the testimony of John Gigante, a dispatcher with the Cleveland Police Department. He testified that he received a 911 call from the defendant at approximately 8:57 a.m. on the morning of March 6, 2003.
The State then called Officer Robert Miles of the Cleveland Police Department. He testified that he responded to the 911 call made by defendant and emergency personnel attempting to revive Chester. He testified that he saw a large number of coins surrounding Chester's body. He testified that the defendant told him that he had gotten into a fight with Chester over money. He testified that the defendant did not tell him that Chester had been shot until after Chester had been transported to the hospital. He testified that defendant admitted, after repeated questioning, that the gun used to shoot Chester was in the basement. Finally, Officer Miles testified that once he obtained the weapon from the basement, defendant stated that he and Chester were struggling with the gun when they both fell over and the gun went off.
Richard Gregg was a friend of both the defendant and Chester. He testified that Chester lived at his workshop and had a collection of coins.
Anne Medley, Chester's sister, testified that Chester collected coins and often kept them on his person.
Renee Brain, a bartender at Lido Lounge where the defendant and Chester frequented, testified that the night before the shooting, the defendant was looking for Chester to help him with some work around his house. She also testified that Chester collected coins.
Deputy County Coroner Erica Armstrong testified that Chester Bright died of a close-range gun shot wound to the left chest area. She testified that Chester had numerous injuries to his face, neck, and scalp as well. Finally, she testified that Chester was legally intoxicated at the time of the shooting.
Timothy Nock of the Coroner's Office Trace Evidence Department testified that he did not have any evidence that Chester ever held the gun that killed him. He also testified that the gunshot residue on Chester's clothing matched the residue of the defendant's gun.
Detective Melvin Smith of the Cleveland Police Department testified that he was the head investigating officer assigned to the case. He testified that there were numerous coins surrounding Chester's body and that Chester only had 25 cents on his person.
Detective Nathan Wilson of the Cleveland Police Department testified that the bullet retrieved from Chester's body came from the defendant's gun.
For the defense, defendant presented two witnesses, Manuel Corchado and Constance Perez, who testified that defendant had a coin collection. In addition, defendant testified on his own behalf. Defendant concedes that he got into an argument with the victim and that they were rolling around on the floor. Defendant claims, however, that Chester was drunk and attacked him. Defendant claims that a struggle ensued and Chester found a gun that was concealed under the cushion of the couch. Defendant testified that both parties struggled with the gun and it just went off. Defendant states that he was in shock and put the gun in the basement so that nothing else would occur. Defendant testified that he called 911.
On September 5, 2003, the jury returned a verdict of guilty to the indicted charge of murder, in violation of R.C. 2903.02, with a three-year firearm specification. Defendant was also found guilty by the trial court of having a weapon while under disability, in violation of R.C. 2923.13. Defendant appeals the verdicts and raises three assignments of error for our review, which will be addressed together where appropriate.
"I. The trial court erred in denying appellant's motion for acquittal as to the charge of murder when the State failed to present sufficient evidence that appellant acted purposely.
"II. Appellant's conviction of murder is against the manifest weight of the evidence."
In his first and second assignments of error, defendant challenges the adequacy of the evidence presented at trial. Specifically, defendant claims that the State failed to present sufficient evidence to support his conviction for murder and that his conviction for murder is against the manifest weight of the evidence. We disagree and find that an evaluation of the weight of the evidence is dispositive of both issues in this case.
The sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. When reviewing the sufficiency of the evidence, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. Id. at 390. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387.
Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462 at 4.
Here, defendant was charged with murder. The offense of murder is defined by R.C. 2903.02, which provides in pertinent part that "no person shall purposely cause the death of another."
Defendant's argument with respect to these assignments of error is that his conviction for murder is not supported by the weight and sufficiency of the evidence because there was no evidence that he purposely or intentionally killed Chester. We disagree.
At trial, the jury heard Deputy County Coroner Erica Armstrong testify that Chester was shot once in the chest at very close range. The jury heard Timothy Nock of the Coroner's Office testify that there was no evidence that Chester ever handled the gun. Officer Miles testified that defendant attempted to conceal the weapon from him. Detective Nathan Wilson testified that the residue on Chester's clothing matched the residue on the defendant's gun. Defendant testified that he got into an argument with Chester about money and that the gun accidently went off as they were struggling with it.
Upon careful review of the testimony and evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in convicting defendant of murder. We find there to be substantial, competent, credible evidence upon which the jury could base its decision that defendant purposely caused the death of Chester Bright. The jury was free to accept or reject any or all of the testimony of the witnesses and assess the credibility of those witnesses. Defendant's version of the events leading up the shooting were inconsistent: He did not tell Officer Miles that Chester had been shot until after Chester had been transported to the hospital, he hid the gun immediately after the shooting and he did not call for help until almost one hour after Chester had been shot. The jury was free to believe the State's witnesses over defendant's own testimony. Consequently, we conclude that defendant's assertion that the State did not produce sufficient evidence to support a conviction is also without merit. Accordingly, defendant's first and second assignments of error are overruled.
"III. The trial court committed plain error in violation of theFourteenth Amendment of the United States Constitution and Article I, Section 10, of the Ohio Constitution when improperly instructing the jury on voluntary manslaughter on the knowingly element."
In his third assignment of error, defendant argues that the trial court gave an erroneous jury instruction on voluntary manslaughter. Specifically, defendant points to the following instruction made by the court:
"* * * if you find the State proved beyond a reasonable doubt that the defendant purposely caused the death of Chester Bright, but also find that the defendant proved by a preponderance that he acted while under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force, then you must find the defendant guilty of murder and guilty of voluntary manslaughter." (Tr. 452-453).
Defendant claims that the trial court erred by using the word "purposely" and omitting the word "knowingly" from the jury instructions that it gave. He asserts that, without the term "knowingly" in the jury instructions, the jury could not properly determine whether he should have been convicted of voluntary manslaughter as opposed to murder. Since defendant did not object to the jury instructions as given, he must demonstrate that plain error occurred. State v. Long (1978), 53 Ohio St.2d 91. An erroneous jury instruction does not amount to plain error unless, but for the error, the result of the trial clearly would have been different. Id.
Although defendant cites to a certain portion of the transcript to support his claim that the trial court omitted the word "knowingly" from the jury instructions, an appellate court must view the jury instructions in the context of the overall charge rather than in isolation. State v. Price (1979),60 Ohio St.2d 136. Here, considering the jury instructions as a whole, we conclude that the trial court provided the jury with adequate legal information on the difference between murder and voluntary manslaughter. The transcript reveals that the trial court informed the jury that it could not find defendant guilty of murder unless it concluded that defendant purposely killed Chester. The trial court defined "purposely" and stated "to do an act purposely is to do it intentionally and not accidently." (Tr. 445). The jury was also instructed that it could find defendant guilty of voluntary manslaughter if it concluded that defendant "knowingly caused the death of Chester Bright" while defendant was under the "influence of sudden passion or a sudden fit of rage, either or which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the defendant into using deadly force." (Tr. 450). The trial court defined "knowingly" by stating:
"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or he is aware that his conduct will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
The verbal instructions given by the judge track the statutory language of the offenses and give the jury adequate instruction on the different offenses. Moreover, the jury was provided with written jury instructions during its deliberations that mirror the instructions given above and clearly define the "purpose" and "knowing" element of each offense. Accordingly, defendant's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, A.J., concurs.
 Kilbane, J., concurs in judgment only.
[1] Count Two was tried to the Court and Count One was tried to the jury.